63881. ORR v. SIEVERT et al.

BIRDSONG, Judge.

Physician-Patient Privilege. Battajoh "Tony" Orr, a young child, was brought to South Fulton Hospital by his mother for observation and treatment. Tony was diagnosed as suffering from "flu," appropriate medication was prescribed, and he was released back home in care of his mother. After several days of no improvement and increasing lethargy and other physical signs of deterioration, Tony was brought back to South Fulton and admitted as a patient for observation. At this time, a tentative diagnosis of meningitis was made. Tony was then transferred to Egleston Clinic at Emory Hospital for more detailed examination and treatment.

Ultimately the meningitis diagnosis was abandoned and a CAT scan established that Tony was suffering from an abscess of the brain. This abscess was surgically removed and a subsequently diagnosed second abscess was also removed. After these operations, Tony experienced changes both physically and emotionally. Tony's mother, Mrs. Orr, then brought a medical malpractice suit against Tri-City Emergency Group, P. A., the professional association who provided the physicians conducting emergency room procedures at

South Fulton, and a Dr. Harris, a member of that association who originally admitted Tony and treated him for the "flu."

Tri-City was insured for medical malpractice by St. Paul Fire & Marine Insurance Company. Tri-City obtained answers to interrogatories from Mrs. Orr and determined that Drs. Sievert and Potts had treated Tony at South Fulton and had recommended Tony's transfer to Egleston. After transfer to Egleston, Tony's treatment was continued by Drs. Sievert and Potts as well as by a neurosurgeon, Dr. O'Brien, who performed the surgical procedures. (Each of these doctors was insured also by St. Paul.) One of the answers to the interrogatories indicated that treatment information from these doctors could be obtained from medical records or by an exchange of information. Tri-City (St. Paul as insurer) then sought through its firm of attorneys to obtain affidavits as to medical treatment and expert opinion from Drs. Sievert, Potts, and O'Brien whether the treatment afforded by Dr. Harris had been in accordance with accepted medical procedures. These affidavits were provided in support of a summary judgment filed by Tri-City and Dr. Harris. Mrs. Orr then ascertained that Drs. Sievert, Potts, and O'Brien had not sought or obtained a release from Mrs. Orr for the release of medical information or opinions rendered in their affidavits. Mrs. Orr then filed a complaint against Drs. Sievert, Potts, and O'Brien, as well as Emory University Clinic (the professional association of which Dr. O'Brien was a member) and St. Paul Fire & Marine Insurance Co. for conspiring to deprive Tony of his rights in the suit against Tri-City and Dr. Harris by violating Tony's right to privacy and violating their implied duty to refrain from disclosing medical treatment involving their patient (Tony) without a release, a subpoena or a request for medical information executed in a legal form. Based upon the above statement of facts, appellees (doctors and their common insurer, St. Paul) sought summary judgment in the instant case. The trial court granted summary judgment to all the defendants and appellant, Mrs. Orr, brings her appeal complaining of the action of the trial court. *Held:*

Certain principles are not in dispute. In Georgia there is no patient-physician privilege; nevertheless because of the Hippocratic Oath taken by all doctors, a doctor is not required to release information concerning a patient unless required to do so by subpoena or other appropriate court order or authorized to do so by this patient or otherwise waived by the patient (Code Ann. § 38-418). A physician who releases information upon written authorization or other waiver by the patient or under court order or subpoena is not liable for such release. Lastly, the statute governing release provides: "Provided, further, that the privilege shall be waived to the extent

that the patient places his care and treatment or the nature and extent of his injuries at issue in any civil or criminal proceeding." Ga. Laws, 1959, p. 190; 1978, p. 1657 (Code Ann. § 38-418 (b)).

This last proviso of Code Ann. § 38-418 has not been interpreted by the courts of this state as of this time. Mrs. Orr raises several valid arguments, i.e., that a doctor has a professional and contractual duty to protect the privacy of his clients and that a breach of that duty gives rise to right to damages. We have no dispute with those principles. However, we can find no proper application of those principles to this case. The cases cited generally presuppose that a right of privacy still exists and that a violation thereof gives rise to damages. They do not address the impact of waiver by the patient resulting in no violation of privacy within the parameters of the waiver. See *Pavesich v. New England Life Ins. Co.,* 122 Ga. 190 (50 SE 68).

In this case Dr. Harris rendered certain medical services to Tony. Thereafter, Drs. Sievert, Potts and O'Brien rendered further medical treatment to Tony concerning the same illness. They had available to them the medical records prepared at South Fulton Hospital by Drs. Harris, Sievert and Potts. These four doctors were admitted by Mrs. Orr to possess information as to the treatment of Tony's illness. Logic compels the conclusion that when Mrs. Orr brought suit against Dr. Harris and Tri-City Emergency Group, the answer to whether Dr. Harris followed medically accepted procedure would depend ultimately in great part upon the treatment subsequently rendered by the other three doctors. As we read the plain language of Code Ann. § 38-418, Mrs. Orr waived her son's qualified right to privacy implicit in the Hippocratic Oath by filing a complaint placing in issue the nature and quality of treatment afforded her son starting with the flu diagnosis and ending with the operations for brain abscesses. Once she filed suit questioning the nature and quality of treatment, a doctor having a source of information pertaining to that suit was authorized to release information pertaining thereto and was immune from liability to the patient or any other person for the release of that information.

Furthermore, we discern no restraint upon a doctor who has entered into a patient-doctor relationship and treated a patient from rendering an appropriate opinion as to the nature and quality of treatment afforded the same patient for the same course of illness by another physician where contention has arisen that the treatment afforded has resulted in medical malpractice. Once a patient places his care and treatment at issue in a civil proceeding, there no longer remains any restraint upon a doctor in the release of medical information concerning the patient within the parameters of the

complaint. To hold otherwise would allow a patient to restrain a doctor who possesses the most relevant information and opinions from responding to inquiries as to such information or giving such opinions without a written authorization, court order or subpoena. The inherent weakness of such a patient right to restrain a doctor in such circumstances is that even without the written authorization and even over the patient's objection, such information can be obtained by court order or subpoena. We conclude therefore that even assuming such a right to privacy existed, it was waived by Mrs. Orr when she filed suit. See *Dennis v. Adcock,* 138 Ga. App. 425 (226 SE2d 292). Likewise, because the insurer had the right to seek medical evidence and opinions in the defense of its client (Tri-City) and the doctors had the right to give the affidavits, we reject any argument that St. Paul and its three insureds (Sievert, Potts and O'Brien) conspired to do what they had a legal right to do. See *McElroy v. Wilson,* 143 Ga. App. 893 (240 SE2d 155).

Because the facts are not disputed (only the legal implication of those facts) and in view of our determination that no invasion of privacy occurred due to the waiver brought about by the filing of the complaint, we conclude that the trial court did not err in granting summary judgment to all the appellee-defendants.

*Judgment affirmed. McMurray, P. J., and Banke, J., concur.*

DECIDED JUNE 22, 1982.

*Robert John White, Edward J. Walsh,* for appellant.

*George W. Hart, Terrance C. Sullivan, Robert L. Pennington, Daniel S. Reinhardt, Sidney F. Wheeler, Ben S. Williams, Michael T. Bennett,* for appellees.